# EXHIBIT A

```
CALLAHAN & BLAINE, APLC
David J. Darnell (SBN 210166)
James M. Sabovich (Bar No. 218488)
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Plaintiff IMPACT IMAGES, INC.
```

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUN 21 2019

K. Thomser.

# SUPERIOR COURT OF CALIFORNIA

# COUNTY OF RIVERSIDE

| | |
|---|---|
| IMPACT IMAGES, INC., a California Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>AARON WOLFE, an individual and doing business as Active Canopy; ROBERT BOLDEN, an individual and doing business as Activate Canopy; and DOES 1 through 10, inclusive,<br><br>    Defendants. | CASE NO. **RIC 1903448**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>1. **BREACH OF CONTRACT**<br>2. **BREACH OF DUTY OF UNDIVIDED LOYALTY**<br>3. **INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>4. **VIOLATION OF CALIFORNIA UNIFORM TRADE SECRETS ACT**<br>5. **VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016**<br>6. **VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 172000** |

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

IMPACT001157

Plaintiff IMPACT IMAGES, INC. hereby brings the instant Complaint against Defendants AARON WOLFE and ROBERT BOLDEN, individually and doing business as Activate Canopy, and alleges as follows:

**I.     INTRODUCTION**

1. The Defendants in this case are former employees who stole confidential trade secrets and then used them to improperly solicit and steal customers. As if this was not bad enough, Defendants did this – and even went so far as to copy compilations of customer data with valuable customer details and order information, as well as forward work emails, set up orders, prepare invoices and create a confusingly similar website for a new competing business – all while they were still being paid as employees of the Plaintiff. Unfortunately, Defendants' actions have continued unabated and, in fact, have become even more brazen since leaving their employment as they are now blatantly using Plaintiff's stolen trade secrets to actively solicit hundreds of Plaintiff's customers. Accordingly, this lawsuit seeks significant damages and injunctive relief to mitigate and stop the irreparable harm that Defendants have already caused by their willful violations of Federal and State Law, as well the ongoing breaches of their own contractual obligations and fiduciary duties.

**II.    PARTIES**

2. Plaintiff Impact Images, Inc. ("Plaintiff" or "Impact") is and has at all relevant times been, a California Corporation with its principal place of business located at 22600 Temescal Canyon Road in Corona, California.[1] Plaintiff is duly authorized to conduct business in California and does so. Plaintiff employs individuals in California and does business in the United States under the name Impact Canopy, USA.

3. Plaintiff markets and sells pop-up tents, canopies, and related accessories, most of which are customized to fit a particular customer's needs. To this end, Plaintiff employs sales consultants and technical representatives who work directly with Impact's clients.

---

[1] At various times, Plaintiff also had an office and warehouse located in Lake Elsinore, California.

4. On October 1, 2010, Defendant Aaron Wolfe ("Wolfe") entered into a written employment agreement with Plaintiff to work as a "Territory Sales Representative." Defendant Wolfe is an individual who has at all relevant times resided in Murrieta, California. From October 1, 2010 until his resignation on May 1, 2019, Wolfe was an employee of Plaintiff based out of Plaintiff's offices in Lake Elsinore and Corona, California.

5. Defendant Robert Bolden ("Bolden") entered a substantively identical employment agreement with Plaintiff on December 5, 2016 for the position of "Inside Sales Representative."[2] Defendant Bolden is an individual who has at all relevant times resided in Menifee, California. From December 5, 2016 until his resignation on April 5, 2019, Bolden was an employee of Plaintiff based out of Plaintiff's offices in Lake Elsinore and Corona, California.

6. Activate Canopy ("Activate") is a fictitious business name registered in Riverside County on February 14, 2019. Plaintiff is informed and believes that Wolfe registered Activate and both Wolfe and Bolden are using Activate to steal Plaintiff's customers and business. Plaintiff is also informed and believes that Activate was and is the alter ego of Defendants Wolfe and Bolden, and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between Defendants such that any separateness between them has ceased to exist in that Defendants Wolfe and Bolden completely controlled, dominated, managed, and operated Activate as their instrumentality so as to suit their convenience. Plaintiff is further informed and believes that Defendants Wolfe and Bolden (1) controlled the business and affairs of Activate, including any and all of their affiliates; (2) commingled the funds and assets of the business, and diverted business funds and assets for their own personal use; (3) disregarded legal formalities and failed to maintain arm's length relationships with the business; (4) inadequately capitalized Activate; (5) used the same office or business location and employed the same employees for the business; (6) held themselves out as personally liable for the debts of the business; (7) used the business as a mere shell, instrumentality or conduit for their individual or personal affairs; (8) used the business

---

[2] Because the agreements are substantively identical, they are referred to collectively herein as the "Agreements" or when referring to a specific individual Defendant, as the "Agreement."

- 2 -
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**IMPACT001159**

to procure labor, services or merchandise for themselves individually or for another person or other entities; (9) manipulated the assets and liabilities of the business so as to concentrate the assets in one and the liabilities in another; (10) used the business to try to conceal their ownership, management and financial interests and/or personal business activities; and/or (11) used the business to try to shield against personal obligations, and in particular the obligations as alleged in this Complaint.

7. Plaintiff does not know the true names of Defendants, their business capacities, their deals with Plaintiff or their role in Plaintiff's actions complained of herein, but on information and belief alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

8. In committing the wrongful acts alleged herein, the Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of the improper acts and transactions that are the subject of this Complaint.

9. Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his, her or its overall contribution to and furtherance of the wrongdoing.

**III.   JURISDICTION & VENUE**

10. This Court has jurisdiction over all causes of action asserted herein, and the amount in controversy exceeds the jurisdictional minimum of this Court.

11. Defendants, and each of them, are subject to the jurisdiction of this Court by virtue of their dealings and transactions in Riverside County and by having caused injuries through their

- 3 -
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**IMPACT001160**

1  acts and omissions within this County to render the exercise of jurisdiction by this Court
2  permissible under traditional notions of fair play and substantial justice.
3      12.    Venue is proper in this Court because the Agreements at issue were entered in
4  Riverside County, the property at issue is in this County, and a substantial portion of the events,
5  acts, omissions and transactions complained of herein occurred in this County. Code of Civ. Proc.
6  § 395(a); *Turner v. Simpson*, 91 Cal.App.2d 590, 591 (1949).
7      13.    Section 6.6 of the Agreements provide that the Agreements are "governed by and is
8  to be construed according to the laws of the State of California and the parties attorn to the
9  exclusive jurisdiction of the Courts of the State of California." Agreements at 5, § 6.6.

10  **IV.  FACTUAL BACKGROUND**

11      14.    On October 1, 2010, Wolfe and Impact executed the Agreement and Wolfe began
12  his employment as a "Territory Sales Representative." His territory of sales included the State of
13  California.
14      15.    On December 5, 2016, Bolden and Impact executed the Agreement and Bolden
15  began his employment as an "Inside Sales Representative." His sales territory included the State
16  of California.
17      16.    The Agreements recognized that Wolfe and Bolden would be working with
18  confidential and trade secret information. Specifically, section 4.2 states "[t]he Employee agrees
19  to keep confidential the confidential, proprietary or trade secret information of the Company
20  including but not limited to products, services, know-how, designs, models, data, inventions,
21  customer lists, business plans, marketing plans and strategies, pricing strategies or other subject
22  matter pertaining to any business of the Company (the 'Confidential Information'). The Employee
23  hereby acknowledges that he understands that his employment relationship creates a relationship
24  of confidence and trust between him and the Company."
25      17.    Likewise, section 4.3 of the Agreements provided that "[t]he Employee
26  understands and acknowledges that all Confidential Information, whether created or developed by
27  the Employee or the Company, is the exclusive property of the Company." Pursuant to Section
28  4.5 of the Agreement, "[i]mmediately upon the termination of his employment for any reason, or

at any other time upon request of the Company, the Employee will forthwith return to the Company." Agreements at 3-4, § 4.5. That includes "(a) all Confidential Information in his possession or control, including all hard copy, digital, electronic, or other copies or forms of such information; (b) all other records, materials, equipment, drawings, documents, and data in his possession or control relating to or belonging to the Company, including all hard copy, digital, electronic, or other copies or forms of such information; and (c) all Company property and equipment in his possession or control." *Id.*

18.  The Agreement also included a non-disclosure provision to protect confidential and trade secret information. Specifically, section 4.4 of the Agreement states: "The Employee will not disclose Confidential Information to anyone at any time (while employed by the Company or after his employment with the Company ends) except as is necessary to properly carry out his employment duties on behalf of the Company. The Employee will use his best efforts to prevent material in his possession or control that contains or refers to Confidential Information from being discovered, used, or copied by third parties and he will use his best efforts to protect and safeguard the Confidential Information from all loss, theft or destruction." Agreements at 3, § 4.4.

19.  Wolfe and Bolden also agreed to avoid conflicts of interest during their employment and specifically agreed that "during his employment with the Company the Employee will not be employed by or provide any services to any other entity that is involved in any business that is competitive with the Company." *Id.* at 4, § 5.1.

20.  The Agreements further prohibited solicitation of Plaintiff's customers as well as solicitation of Plaintiff's employees and contractors. To this end, section 5.2 of the Agreement states "[t]he Employee agrees that during his employment with the Company the Employee will not on his own behalf or on behalf of any other person directly or indirectly (i.e. through providing another person with customer information), approach or contact any customer of the Company for the purpose of inducing that customer to reduce the client's level of business with the Company, or to encourage the customer to start doing business or to increase the client's level of business with any other person or entity when such a change may negatively affect the opportunity of the Company to increase its level of business with the customer." *Id*. at 4, § 5.2. As to employees and

- 5 -
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**IMPACT001162**

contractors, Wolfe and Bolden each agreed that "during his employment with the Company the Employee will not on his own behalf or on behalf of any other person directly or indirectly seek to persuade any employee or contractor of the Company to end his or her employment or contractual relationship with the Company or to join (as employee, consultant or contractor) any other company, employer, or entity." *Id.*, at 4, § 5.3.

## WOLFE DIVERTS SALES, STEALS TRADE SECRETS, AND ESTABLISHES A COMPETITOR COMPANY WHILE WORKING FOR IMPACT

21. On November 16, 2018, Wolfe was involved in a physical altercation with another employee at the workplace. This resulted in disciplinary action whereby Wolfe was suspended for two weeks without pay from January 13, 2019 to January 26, 2019 and required to attend mandatory company paid courses on Work Place Ethics, Harassment, and Bully and Respect in the Workplace. Impact is informed and believes, and on that basis alleges, that at this point Wolfe began actively planning and taking steps to misappropriate business opportunities from Impact for himself.

22. Prior to leaving Impact, and while still employed by and drawing a salary from Impact, Wolfe established a competing business named Activate. Activate's website is located at http://activatecanopy.com/, and was created using intellectual property, including digital images, that Wolfe took from Impact prior to or on his departure. Wolfe designed and modeled Activate's website to look like Impact's website and even incorporated many of the templates from Impact's website into Activate's website. Impact is informed, believes, and on that basis alleges, that the Activate website and company were designed to be as similar to Impact as possible so that upon Wolfe's theft of Impact's customer list, Impact's customers would be lured to Activate and would mistakenly believe that Activate was affiliated or associated with Impact.

23. Wolfe did not wait until his resignation to begin competing with Impact. Even while he was a paid employee of Impact, he would covertly re-direct Impact customers to Activate. One of many examples of Wolfe's illicit competition with Impact is Wolfe's theft of sales to Surf Soccer LA. On March 29, 2019 – over one month prior to his last day at Impact – Wolfe diverted an order from Surf Soccer LA, an Impact customer, to Activate. Activate then

used Max Canopy, Impact's contractor and manufacturer, to fill the order. Wolfe was thus able to use Impact's own manufacturing contractor to compete with Impact while he was an Impact Employee. After leaving Impact, Wolfe continued using Impact's manufacturing contractor by using the alias Damon Sealy to conceal his identity.

24. Impact is informed and believes, and on that basis alleges, that Wolfe diverted the vast majority of his sales in 2019 from Impact to Activate. Thus, Impact records show historically low sales by Wolfe starting in January 2019 and continuing to his resignation on May 1, 2019.

25. Activate's website and Wolfe's marketing of Activate were deliberately designed to mislead customers into believing that they were still doing business with Impact even though it was through Active, which was an entirely new, different and separate business. For example, the name "Activate Canopy" is similar to "Impact Canopy" and the templates and layout of the Activate website are nearly identical to the templates and layout of Impact's website. In addition, the Activate website not only displays photographs that were taken by Impact, but those photographs depict Impact's own products. On top of this, Activate's website purports to warranty products of Impact that Wolfe sold while working at Impact.

26. Customers who emailed Wolfe while he was employed at Impact about purchasing Impact products were later contacted by Wolfe so that he could attempt to sell or in fact did sell those same customers the same products they had asked Impact about, but the sale would come from or in fact did come from Activate. For example, Amy Sinon contacted Wolfe before he left Impact regarding a replacement bag for the OC Surf Canopy she purchased from Impact the prior season. Wolfe stated he could provide the bag and then sent her a May 1, 2019 invoice from Activate. Multiple clients, including Ms. Sinon, have also been misled into believing that Wolfe is still working with Impact. Indeed, Impact has received multiple customer complaints on this very issue. One customer forwarded an email that Wolfe sent on June 4, 2019 to an Impact customer that, as the customer put it, "made it seem that he [Wolfe] is still with you." Wolfe, as a representative of Impact, had also previously sold canopies for Slammers FC, a youth soccer organization. On June 4, 2019, Wolfe emailed as though he was still working with Impact and announced that "[t]he New Slammers Ordering Page is Now Ready! . . . I'm happy to announce

- 7 -
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**IMPACT001164**

that the new Ordering Page is now up and running . . . Same great product . . . Same great price . . . all new ordering page (100% online . . . no more print forms!!)" This and other emails sent to Impact customers were calculated to cause, and did cause, those customers to believe that they would be ordering from Impact, but that it would just be done through a "new ordering page."

27. Not only have Wolfe's actions diverted sales from Impact to Activate by deceiving customers into believing that when dealing with Wolfe they are still dealing with Impact, but those actions have been and are damaging Impact's reputation. Impact is informed and believes, and on that basis alleges, that Activate has and will continue to deliver substandard, inferior, and incorrect products. Customers who believe those products are from Impact will and do attribute the substandard, inferior, or incorrect product to Impact and thereby diminish Impact's good name and brand.

28. This is not just a matter of some former employees establishing a competitor business. Rather, in departing Impact, Wolfe took numerous confidential and trade secret documents, including:

    a) Technical plans and designs for the creation of canopies.

    b) Manufacturing specifications for certain canopies.

    c) Compilations of identifying data on customers likely to purchase canopies, titled Impact Canopies USA Retention Master List with approximately 13,924 entries. It is not simply a collection of information but rather a compilation of past and potential customers with inclusion or exclusion based on needs and characteristics of the customer and based on a developed relationship with or knowledge of the customer or potential customer.

These are collectively referred to herein as the "Trade Secrets." Impact invested substantial expense and effort in developing these materials. It likewise put substantial effort into securing their confidentiality. These materials were not shared publicly. Access was limited. Employees with access, such as Wolfe and Bolden, were required to sign confidentiality agreements. Further, the materials were maintained in a secure, password protected network.

29. Shortly before his departure, Wolfe engaged in widespread theft of Plaintiff's

- 8 -
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**IMPACT001165**

property. He accessed and copied numerous electronic files, including Plaintiff's customer list and information relating to customer orders. Forensic analysis has shown that he smuggled thousands of Impact documents, including Trade Secret documents, onto a Google drive. As to emails, he not only forwarded prior Impact emails – which were Impact's property – to a private email account, but he also engaged in ongoing commercial theft by covertly establishing an auto-forward email rule. Under it, emails sent by customers, or prospective customers, to his Impact email address would be auto-forwarded to Wolfe's new personal email address so that he could try to fulfill Impact's orders through Activate or otherwise solicit or lure these Impact customers over to Activate.

30. Finally, on or near his last day, Wolfe also walked through the production area, asking the staff technical questions about printing and fabric production, attempting to secure additional confidential information he would use to compete with Impact. Wolfe misled the individuals he was speaking with in that he did not inform them that he was leaving Impact or that the information would be used for improper competition. In addition, before he left the company, Wolfe attempted to delete more than 26,000 emails relating to the business of Impact.

**BOLDEN WORKS WITH WOLFE TO USE STOLEN IMPACT TRADE SECRETS TO COMPETE WITH IMPACT**

31. Bolden resigned from Impact, effective April 5, 2019.

32. Like Wolfe, Bolden's resignation followed inexplicably low sales in early 2019. In January 2019, Bolden's sales were approximately half of his sales goal. Bolden had no explanation for the low sales but did promise Impact that he was trying. However, Impact is informed, believes, and on that basis alleges that the real reason Bolden's sales were low is because he was working with Wolfe to divert sales to Activate.

33. Like Wolfe, Bolden also put in place an auto-forward for emails directed to his Impact email account.

34. Impact is informed, believes, and on that basis alleges, that since early 2019, Bolden and Wolfe conspired to use Impact's customer list to solicit Impact's clients even while one or both of them were employees of Impact. Impact has received notifications from customers

- 9 -
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**IMPACT001166**

who have been solicited by Bolden on behalf of Activate. These contacts were made using Impact's client list and Impact's products. Defendants' essential business plan, which they have executed, is to use a stolen customer list to contact Impact's customers, then offer to sell those customers the same products for less. This strategy is only made possible by Wolfe's theft of confidential information on Impact's customers and Impact's products.

35. Following their departures from Impact, both Wolfe and Bolden have used Impact's Trade Secrets, including the customer list Wolfe stole, to solicit Impact customers. Impact is informed, believes, and on that basis alleges, that Wolfe and Bolden have solicited hundreds of Impact's customers using the stolen customer list and that they continue to do so on a daily basis. This is not about Wolfe contacting customers that he had a prior relationship with. To the contrary, Wolfe and Activate have directly solicited customers with whom Wolfe has had no prior dealings or business. Using Impact's own customer lists, Activate has contacted Impact's customers and told them that Activate is offering "the same great products at even better pricing" than Impact and that they would be working with the "[s]ame [g]reat [s]alesman."

36. Defendants have been successful in using stolen Trade Secrets to divert Impact sales to Activate. While the full extent of the damage Defendants have caused Impact has not yet been ascertained – and indeed is increasing daily – Impact has already learned of multiple instances where Defendants contacted Impact's customers using Impact's customer list. Defendants then sold those customers products that the customers would otherwise have purchased from Impact.

37. Defendants' mimicking of Impact has even gone as far as the criminal use of Impact's fire retardant certification. Under California law, canopies and tents – with inapplicable exceptions – must be "made from nonflammable material or are treated and maintained in a flame-retardant condition." Cal. Health & Safety Code § 13115(a); 19 CCR § 332(a) ("All tents manufactured for sale, sold, rented, offered for sale, or used in California shall be made from nonflammable material or one of the following flame resistant fabrics or material approved by the State Fire Marshal."). Moreover, canopy and tent providers must obtain a fire retardant certification and receive a specific registration number from the California State Fire Marshall.

*See generally*, 19 CCR §§ 315(d), 334, 335.  Activate did not receive its own certification – it just copied Impact's unique Fire Marshall certification number onto Activate's new tents as if that product was somehow certified.  Not only is this a blatant misappropriation, but it also deceives customers into believing that they are purchasing tents that have been certified as fire resistant when that actually is not the case.

## FIRST CAUSE OF ACTION

### *Breach of Contract*

(Against All Defendants)

38.  Plaintiff alleges, as though fully set forth herein, the preceding allegations in paragraphs 1 through 37.

39.  Defendants both had valid contractual Agreements with Impact.

40.  Impact did all, or substantially all, of the significant acts required of it under the Agreements, or was excused from doing so.

41.  Wolfe and Bolden breached the Agreements by, among other things:

   a) Soliciting Impact customers while employed by Impact for their own benefit;

   b) Soliciting Impact employees and consultants while employed by Impact for their own benefit;

   c) Competing with Impact while employed by Impact;

   d) Diverting Impact customers to Activate;

   e) Misappropriating Impact's confidential information and Trade Secrets for their own benefit, or using such information when they knew it had been misappropriated;

   f) Misappropriating Impact's economic opportunities for their own benefit;

   g) In the case of Wolfe, failing to return Impact's property, including its Trade Secrets and confidential information, upon leaving impact;

42.  As a result of Defendants' actions complained of herein, Impact has been damaged.

## SECOND CAUSE OF ACTION

### *Breach of Duty of Undivided Loyalty*

(Against All Defendants)

43. Plaintiff alleges, as though fully set forth herein, the preceding allegations in paragraphs 1 through 41.

44. As an agent and employee of Impact, Defendants owed Impact an undivided duty of loyalty and were bound to act in the best interest of Impact.

45. Defendants knowingly acted against the interests of Impact, and in their own personal interest, by among others:

   a) Soliciting Impact customers while employed by Impact for their own benefit;
   b) Soliciting Impact employees and consultants while employed by Impact for their own benefit;
   c) Competing with Impact while employed by Impact;
   d) Diverting Impact customers to Activate;
   e) Misappropriating Impact's confidential information and Trade Secrets for their own benefit, or using such information when they knew it had been misappropriated;
   f) Misappropriating Impact's economic opportunities for their own benefit;
   g) In the case of Wolfe, failing to return Impact's property, including its Trade Secrets and confidential information, upon leaving impact;

46. Impact did not give informed consent to Defendants' conduct.

47. As a result of Defendants' actions complained of herein, Impact has been damaged.

48. The acts complained of herein were undertaken with oppression, fraud, and malice and entitle Impact to an award of exemplary or punitive damages under Cal. Civ. Code § 3294.

### THIRD CAUSE OF ACTION

*Interference with Prospective Economic Advantage*

(Against All Defendants)

49. Plaintiff alleges, as though fully set forth herein, the preceding allegations in paragraphs 1 through 48.

50. Impact and its customers were in an economic relationship that probably would

have resulted in economic benefit to Impact.

51. Defendants knew of the economic relationship between Impact and its customers.

52. By engaging in the acts complained of herein, Defendants intended to disrupt the relationship between Impact and its customers.

53. As a result of Defendants' actions, Impact's relationship with its customers has been disrupted and Impact has been damaged by that disruption.

54. The acts complained of herein were undertaken with oppression, fraud, and malice and entitle Impact to an award of award of exemplary or punitive damages under Cal. Civ. Code § 3294.

## FOURTH CAUSE OF ACTION

*Breach of California Uniform Trade Secret Act, Cal. Civ. Code § 3426, et seq.*

(Against All Defendants)

55. Plaintiff alleges, as though fully set forth herein, the preceding allegations in paragraphs 1 through 54.

56. Impact was the owner of the Trade Secrets.

57. The Trade Secrets derived independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.

58. Impact protects the confidentiality and secrecy of the Trade Secrets by, among other things, limiting access to the information, requiring that those who access the information execute confidentiality agreements, and maintain the information under "lock and key" via a password secured network.

59. The Trade Secrets were legally protected trade secret at the time Wolfe misappropriated them.

60. Defendants improperly used the Trade Secrets for their own economic benefit and in direct competition with Impact.

61. As a result of Defendants' misappropriation and misuse of Impact's Trade Secrets, Impact was harmed, and Defendants were unjustly enriched.

62. The acts complained of herein were undertaken with oppression, fraud, and malice

and entitle Impact to an award of exemplary or punitive damages under Cal. Civ. Code § 3294.

## FIFTH CAUSE OF ACTION

*Breach of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, et seq.*

(Against All Defendants)

63. Plaintiff alleges, as though fully set forth herein, the preceding allegations in paragraphs 1 through 62.

64. Impact was the owner of the Trade Secrets.

65. The Trade Secrets were legally protected trade secret at the time Defendants misappropriated them.

66. Defendants improperly used the Trade Secrets for their own economic benefit and in direct competition with Impact.

67. Defendants misappropriated and improperly used the Trade Secrets in early 2019; well after the effective date of the Defend Trade Secrets Act of 2016, 18 U.S.C. §1836, *et seq.*, and Defendants continue to misuse the Trade Secrets on a daily basis.

68. As a result of Defendants' misappropriation and misuse of Impact's Trade Secrets, Impact was harmed, and Defendants were unjustly enriched.

69. Defendants' actions complained of herein were willful and malicious, entitling Impact to an award of exemplary damages and an award of attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(C).

## SIXTH CAUSE OF ACTION

*Violation of Business & Professions Code § 17200*

(Against All Defendants)

70. Plaintiff alleges, as though fully set forth herein, the preceding allegations in paragraphs 1 through 69.

71. Defendants are liable for violations of the California unfair competition laws.

72. Impact brings this Count pursuant to the Unfair Competition Law at Business & Professional Code §§ 17200, *et seq.* Defendants' conduct described in Counts one through six each independently constitute unfair, unlawful and/or fraudulent business practices within the

- 14 -
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**IMPACT001171**

meaning of Business & Professional Code § 17200.  Moreover, Defendants' misuse of Impact's California Fire Marshall registration number, as described above, constitutes an independent unfair, unlawful, and/or fraudulent business practice.

73. Impact is subject to real and immediate threat of continuing and additional injury and irreparable harm from Defendants.  Defendants continue to use the Trade Secrets, and in particular Impact's customer lists, to improperly solicit Impact's customers and interfere with Impact's business.

74. Pursuant to Business & Professions Code §17204, Impact seeks an order of this Court enjoining Defendants from continuing to engage in the acts as set forth in Counts One through six, which acts constitute violations of Business & Professions Code § 17200 *et seq.*

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment against Defendants, and each of them jointly and severally, including relief as follows:

1. For compensatory damages of at least $1,000,000;
2. For an award of exemplary or punitive damages under Cal. Civ. Code § 3294 and other applicable laws and statutes for Defendants' conduct undertaken with intent to injure Impact, or with a willful and conscious disregard of Impact's rights;
3. For a Temporary Restraining Order enjoining Defendants from divulging, using, disclosing, or making available to any third person or entity Impact's Trade Secrets, or using any Trade Secrets for the purpose of directly or indirectly competing with Impact;
4. For a Permanent Injunction under California Civil Code § 3426.2 to enjoin misappropriation of Trade Secrets and to eliminate commercial advantage that otherwise would be derived from the misappropriation;
5. For a Permanent Injunction under 18 U.S.C 1836(b)(3)(A) to enjoin misappropriation of Trade Secrets on such terms as the Court deems just.
6. For a Permanent Injunction forever requiring that (1) Defendants cease and desist contacting Impact customers, (2) Defendants cease and desist from the use of any

- 15 -
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**IMPACT001172**

Trade Secret taken from Impact, (3) Defendants destroy copies of any Trade Secret in their possession, and (4) Defendants return any and all property taken from Impact;

7. For an accounting of all Defendants' profits, revenues, accounts, and proceeds received or obtained, directly or indirectly, or arising out of their use of Impact's Trade Secrets;

8. For general damages for loss of goodwill or harm to Impact as a result of Wolfe's actions complained of herein;

9. For Pre-judgment and post-judgment interest on the above damage awards;

10. For Impact's costs and attorneys' fees in this matter;

11. For an award of exemplary damages and attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(C);

12. For disgorgement of any and all amounts by which Defendants were unjustly enriched; and

13. For such other and further relief as this Court may deem just and proper.

Dated: June 21, 2019

**CALLAHAN & BLAINE, APLC**

By: _____
David J. Darnell
James M. Sabovich
Attorneys for Plaintiff IMPACT IMAGES, INC.

- 16 -
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

IMPACT001173